EDWARDS et al. v. GANN et al.

No. 35510. March 31, 1953.

*255 P. 2d 499.*

J. P. Speer, Duncan, for plaintiffs in error.

Chas. E. Jackson, Pauls Valley, for defendants in error.

DAVISON, J.  This is a suit to quiet title founded upon a resale tax deed. It was brought by the plaintiff, W. J. Gann, the grantee of the original tax sale purchaser, with whom, his oil and gas lessee, Charles E. Jackson, was joined as an additional party plaintiff. The defendants, Kate Edwards and some 22 others, were the former record owners of undivided oil and gas mineral interests in the property. The parties will be referred to as they appeared in the trial court.

W. A. Gann, the father of plaintiff, was the owner of a large ranch in Stephens county, Oklahoma, known as the Gann Ranch, covering the major part of some four or five sections of land.  About the year 1920, he purchased from one Roy Huffman an adjoining 130-acre tract, the grantor reserving from the conveyance a one-half or 65-acre interest in the oil and gas thereunder.  An undivided 15-acre interest out of that which was reserved is the res here involved.  The former record owners of varying proportions of said 15-acre interest are the defendants herein.

The plaintiff and his wife lived with his parents on the family homestead located on a plot just west of the Huffman 130 acres, and after the death of the mother, they continued to live with W. A. Gann, the father.  Subsequently, plaintiff's wife died and then in 1943 his father died. During all this time, plaintiff continued to live in the family home.

The record in the case at bar is far from clear as to the different business transactions through the years. It seems, however, that in about 1930, the principal part of the ranch, exclusive of the Huffman farm, was deeded by the elder Gann to the Travelers Insurance Company in satisfaction of a mortgage indebtedness. After that time, W. J. Gann leased it and paid rent to the former mortgagee.  In 1939, the Huffman tract was sold at resale for delinquent taxes and was bought in by one J. G. Welch.  It, too, was covered by a mortgage which was foreclosed. In 1943, the plaintiff W. J. Gann purchased the Huffman tract through an attorney representing both the mortgagee and the tax sale purchaser.  Upon payment of the purchase price to the attorney, Gann received a deed from each of them.  The deed from the holder of the tax title, the said J. G. Welch, is the basis of the title plaintiff here relies upon as paramount to the claims of defendants to the mineral interests. It was so adjudged by the trial court who made findings of fact and conclusions of law.  From that judgment, defendants have appealed.

Defendants do not attack the regularity of the tax sale procedure, nor the validity of the tax deed itself.  They rely, rather, upon the holding of this court in the case of Bereman v. Grant, 195 Okla. 330, 157 P. 2d 743, to the effect that:

"A son, living with his aged father upon and in charge of the property mortgaged by the father, will not be permitted, by securing a tax deed thereto, to defeat the lien of a mortgage, in the presence of facts indicating and showing a moral obligation upon the son to see that the taxes are paid."

and contend that owners of mineral interests stand in the same position as mortgagees.  Many other cases are cited

wherein the fact situation varies from that in the Bereman case, supra, to that in the case of Burnett v. Cole, 193 Okla. 25, 140 P. 2d 1012, wherein it was held that the owner of the surface of lands, in whose name the property is assessed for taxation, could not obtain title from tax sale purchaser and defeat the owner of the coal rights of his interest.

It will be noted, however, that in all cases where the tax deed is stricken down one of two situations exists. Either the purchaser of the tax title was under moral obligation to pay the taxes in the first instance, or such purchaser was guilty of fraud in some degree in acquiring the same. In the case at bar, the record does not disclose that either situation obtained.

The property involved was not assessed on the tax rolls in the name of either W. A. Gann or W. J. Gann, the plaintiff. For some nine or ten years prior to the tax sale of the Huffman lands to Welch, W. J. Gann had been renting the ranch from the mortgagee owner and furnishing his father a place to live rather than having his father furnish him a place to live as was contended by defendants. There was no obligation of any kind on W. J. Gann to pay the taxes and his father had no money or property from which they could be paid. No fraud is attributed to him. He purchased the Huffman place through an attorney who furnished him with a deed from the tax title holder and a deed based on the mortgage foreclosure. He may have incidentally used the Huffman place while his father held title, but the testimony is in conflict about that.

The plaintiff here stands on much firmer ground than did the tax title purchaser in the case of Patterson v. Wilson, 203 Okla. 527, 223 P. 2d 770, wherein one cotenant in the minerals purchased the resale tax title to the exclusion of his former cotenant. The following sound statement of the principle is found in the body of the opinion:

"In such case, where no fraud, collusion, or inequitable conduct is involved, and where there is no moral or legal obligation upon a cotenant to pay the taxes, we see no reason why such cotenant may not, if the land has been sold to the county or a third party and the title of the former owner and the cotenant has been thereby terminated, acquire the property from the purchaser at the tax sale. No good reason can be suggested for holding that in such case a cotenant, by virtue of his former cotenancy, is forever precluded from obtaining title to the property free from the claim of other cotenants."

In the case at bar, there was no fraud, collusion or inequitable conduct nor was there a moral or legal obligation to pay the taxes on the part of the plaintiff, W. J. Gann. His tax title, being otherwise sufficient, was paramount to the claims of the defendants. In the case of State ex rel. Commissioners of Land Office v. Southland Royalty Co., 204 Okla. 284, 230 P. 2d 471, we held that:

"A resale tax deed vests in the grantee a full and complete title to the land conveyed, including all mineral interests, whether severed or not, where there is no actual production of oil or gas during the years for which taxes were levied."

The judgment of the trial court is in harmony with these decisions.

Judgment affirmed.

HALLEY, C.J., JOHNSON, V.C.J., and CORN, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur. WELCH and O'NEAL, JJ., concur in result.